**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

LUIS GARCIA,
      *Plaintiff*,

      v.

LAW OFFICES HOWARD LEE SCHIFF,
P.C.,
      *Defendant*.

No. 3:16-cv-791 (VAB)

**MEMORANDUM OF DECISION AND ORDER**

**TABLE OF CONTENTS**

I.   PROCEDURAL HISTORY ............................................................................................... 3

II.  FINDINGS OF FACT: THE PARTIES ............................................................................. 6

III. FINDINGS OF FACT: THE LETTER ............................................................................. 6

    A.   The Nature of the Letter ............................................................................................. 7

    B.   The Two Balances ..................................................................................................... 11

IV.  CONCLUSIONS OF LAW: MATERIALLY MISLEADING STATEMENT .................... 11

    A.   Misleading Statement ............................................................................................... 11

    B.   Material Statement ................................................................................................... 13

V.  CONCLUSIONS OF LAW: BONA FIDE ERROR…………………………………………15

    A.   First Prong of the Bona Fide Error Defense…………………………………………15

    B.   Second Prong of the Bona Fide Error Defense………………………………………16

    C.   Third Prong of the Bona Fide Error Defense…………………………………………19

VI.  DAMAGES…………………………………………………………………………………22

VII. CONCLUSION ............................................................................................................... 27

Luis Garcia ("Plaintiff") sued the Law Offices Howard Lee Schiff, P.C. ("Schiff firm" or "Defendant"), alleging a violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

Following a one-day bench trial, the Court now sets forth its findings of fact and conclusions of law under Federal Rule of Civil Procedure 52(a)(1). FED. R. CIV. P. 52(a)(1).

As explained below, the Court finds that Defendant sent a materially misleading letter to Mr. Garcia in violation of the FDCPA, and that Defendant is not entitled to the bona fide error defense to strict liability under the FDCPA. Mr. Garcia therefore has established an entitlement to damages under the FDCPA. 15 U.S.C. § 1692k.

Accordingly, the Court **ORDERS** Judgement for Mr. Garcia and **AWARDS** $500 in statutory damages, but **DENIES** any other relief, except for attorney's fees and costs.

 Mr. Garcia may file a motion for attorney's fees and costs by **August 30, 2019**. Defendant may respond by **September 20, 2019** and any reply to any response shall be due by **September 27, 2019**.

## I. PROCEDURAL HISTORY

On May 23, 2016, Mr. Garcia sued Defendant, alleging that he had received a debt collection letter from the Schiff firm on or around February 12, 2016. Compl. ¶ 9. Mr. Garcia claimed that the wording of the letter "ma[de] it impossible for a consumer to know how much is owed and if the debt will be considered paid if payment is made in full." *Id*. ¶ 13.

On June 14, 2016, Defendant moved to dismiss the case. Mot. to Dismiss for Lack of Jurisdiction, ECF No. 9. On June 30, 2016, Mr. Garcia opposed the motion to dismiss. Mem. of Law in Opp. to Def. Mot. to Dismiss, ECF No. 13.

On March 30, 2017, the Court granted in part and denied in part Defendant's motion to dismiss. Ruling on Def. Mot. to Dismiss. The Court granted the motion to dismiss claims under 15 U.S.C. § 1692(d) and 15 U.S.C. § 1692(f), found that Mr. Garcia had not stated a claim under 15 U.S.C. § 1692(e)(2), 15 U.S.C. § 1692(e)(5), 15 U.S.C. § 1692(e)(7) and 15 U.S.C. §§ 1692(e)(8), but denied the motion to dismiss claims for violations of 15 U.S.C. § 1692(e) and 15 U.S.C. § 1692(e)(10). *Id.*

On April 12, 2017, Defendant filed its Answer. Answer, ECF No. 19.

On July 7, 2017, Defendant moved for summary judgment. Mot. for Summ. J., ECF No. 31.

On August 3, 2017, Mr. Garcia moved to amend or correct his responses to Defendant's Requests for Admissions, Interrogatories and Requests for Production. Pl. First Mot. for Withdrawal and Amend. of Responses to Admissions, ECF No. 35. The next day, Mr. Garcia opposed summary judgment. Mem. in Opp. to Mot. for Summ. J., ECF No. 37.

On February 21, 2018, the Court granted Mr. Garcia's motion to amend or correct his responses, denied Defendant's motion for summary judgment without prejudice, and set an amended discovery schedule. Ruling on Mot. for Summ. J. and Mot. to Withdraw Admissions, ECF No. 41.

On July 26, 2018, Defendant again moved for summary judgment. Mot. for Summ. J., ECF No. 56.

On August 3, 2018, Mr. Garcia moved for summary judgment. Mot. for Summ. J., ECF No. 57.

On August 16, 2018, Mr. Garcia opposed Defendant's motion for summary judgment. Mem. in Opp. to Mot. for Summ. J., ECF No. 58.

On August 24, 2018, Defendant opposed Mr. Garcia's motion for summary judgment, Mem. in Opp. to Mot. for Summ. J., ECF No. 59, and moved to strike the affidavits of Luis Garcia. Mot. to Strike Affidavits of Luis Garcia, ECF No. 60.

On December 13, 2018, the Court convened a hearing on the pending motions. Min. Entry, ECF No. 68.

On December 14, 2018, the Court denied the parties' cross-motions for summary judgment and Defendant's motion to strike. Ruling on Mots. for Summ. J. and to Strike Affidavits, ECF No. 69.

On January 28, 2019, Defendant filed a motion *in limine* to preclude Mr. Garcia from introducing any evidence that had not been disclosed during discovery, Def. Mot. *in Limine*, ECF No. 71, and set a February 18, 2019 response deadline on the docket.

On February 1, 2019, the parties filed the Joint Trial Memorandum ("JTM"). Joint Trial Mem., ECF No. 74.

On February 19, 2019, Mr. Garcia filed his opposition to the motion *in limine*. Pl. Resp. in Opp. to Def. Mot. *in Limine*, ECF No. 75.

On February 25, 2019, Defendant filed a motion to strike Plaintiff's opposition as untimely. Mot. to Strike Pl. Opp. to Def. Mot. *in Limine*, ECF No. 76.

Three days later, Defendant filed its reply to Plaintiff's opposition to the *motion in limine*. Def. Resp. to Pl. Opp. to Mot. *in Limine*, ECF No. 77.

On May 10, 2019, the Court issued a ruling denying without prejudice to renewal Defendant's motions *in limine*. Ruling on Motions *in Limine*, ECF No. 79.

The Court scheduled a bench trial for May 20, 2019. Notice, ECF No. 78.

On May 20, 2019, the Court held a bench trial. During the trial, two witnesses testified: Mr. Garcia and Karen Wisniowski, Defendant's managing partner. Tr. of Proceedings ("Tr.") at 8:5–12; 35:17–23. Two exhibits were marked for admission and one exhibit was admitted into evidence. Tr. 33:7–19; 115: 6–13.

On May 31, 2019, Defendant filed its proposed findings of fact and conclusions of law. Def. Proposed Finding of Fact and Conclusions of Law ("Def. Post-Trial Findings"), ECF No. 89.

On June 7, 2019, Plaintiff filed its opposition to Defendant's findings of fact and conclusions of law. Pl. Opp. to Def. Proposed Finding of Fact and Conclusions of Law ("Pl. Post-Trial Opp."), ECF No. 90.

On June 13, 2019, Defendant responded to Plaintiff's opposition. Def. Resp. to Pl. Opp. to the Proposed Finding of Fact and Conclusions of Law ("Def. Post-Trial Reply"), ECF No. 92.

## II.    FINDINGS OF FACT: THE PARTIES

Luis Garcia is a resident of Waterbury, Connecticut. Compl. ¶ 4. For the purposes of this lawsuit, Mr. Garcia is a consumer who accrued personal debt that was subject to debt collection. Tr. 10:1–14; Def. Post-Trial Findings ¶¶ 1–2.

Law Offices Howard Lee Schiff, P.C. is a law firm that engages in debt collection work, including the collection of a debt owed by Mr. Garcia to Midland Funding, LLC. Tr. 37:17–21, 61:4–14; Def. Post-Trial Findings ¶ 1.

## III.    FINDINGS OF FACT: THE LETTER

To find a violation of the Fair Debt Collection Practices Act ("FDCPA"), the Court must first determine that a debt collector covered by the Act communicated "with a consumer in connection with the collection of any debt[.]" 15 U.S.C. § 1692g.

The parties agree that Defendant is a debt collector subject to the Fair Debt Collection Practices Act, that Mr. Garcia is a debtor, and that Defendant sent a letter to Mr. Garcia related to this debt on February 12, 2016. Tr. 33:7–19; Def. Post-Trial Findings ¶ 1.

### A.    The Nature of the Letter

This lawsuit concerns a letter printed on the stationery of the Law Offices Howard Lee Schiff, P.C. addressed to Luis Garcia of Waterbury, Connecticut, and dated February 12, 2016. Letter to Luis Garcia from Law Offices Howard Lee Schiff, P.C. (Feb. 12, 2016), Trial Exhibit A ("Ex. A").

The parties disagree on whether the letter was "an attempt to collect a debt" and subject to the FDCPA, Compl. ¶ 9; Tr. 9:6–7; or an informational letter that did not attempt to collect a debt, Tr. 61:4–20; *see also Hart v. FCI Lender Servs., Inc.*, 797 F.3d 219, 225 (2d Cir. 2015) ("We here conclude that whether a communication is in connection with the collection of a debt is a question of fact to be determined by reference to an objective standard. Thus, in determining at the motion to dismiss stage whether the Letter triggers the Act's notice provisions, we must view the communication objectively, asking whether Hart has plausibly alleged that a consumer receiving the communication could reasonably interpret it as being sent in connection with the collection of a debt rather than inquiring into the sender's subjective purpose.") (internal quotations and citation omitted)).

The front of the letter lists the "Original Creditor" as First Premier Bank, the original account number as XXXXXXXXXXXX4160, the "Current Owner" as Midland Funding, LLC, and the "Account Number" as Z13232. Ex. A at 1.

In the top-third of the letter "Balance" is listed as $565.46. *Id*.

The body of the letter states:

> As you are aware, your FIRST PREMIER BANK account is being serviced by Law Offices Howard Lee Schiff, P.C. MIDLAND FUNDING, LLC is the current owner of this account. We are required to provide some additional information pertaining to this account. Please keep this information for your records.

*Id*.

In the bottom-third of the letter, "Charge-Off Balance" is listed as $663.94 and "Current Balance" is listed as $565.46. *Id*. Zero balances are listed for the: (1) "Post Charge-Off Interest Accrued," (2) "Post Charge-Off Fees Accrued," and (3) "Post Charge-Off Payments & Credits." *Id*. The bottom of the letter contains a telephone number and hours of operation for Defendant and the phrase "THIS COMMUNICATION IS FROM A DEBT COLLECTOR." *Id*.

EAST HARTFORD, CONNECTICUT
PORTLAND, MAINE
AUBURN, MASSACHUSETTS
NASHUA, NEW HAMPSHIRE
PROVIDENCE, RHODE ISLAND
BRATTLEBORO, VERMONT

# HOWARD LEE SCHIFF, P.C.

510 Tolland Street
Telephone (860) 528-9991
(866) 234-7604

East Hartford, Connecticut 06108
Facsimile (860) 528-7602

Howard Lee Schiff 1933-2007

LUIS GARCIA
262 WALNUT ST APT 2
WATERBURY CT    06704

February 12, 2016

ORIGINAL CREDITOR: FIRST PREMIER BANK
ORIGINAL ACCOUNT NUMBER: XXXXXXXXXXX4160
CURRENT OWNER: MIDLAND FUNDING, LLC
ACCOUNT NUMBER: Z13232
BALANCE: $565.46

Dear LUIS GARCIA,

As you are aware, your FIRST PREMIER BANK account
is being serviced by Law Offices Howard Lee Schiff, P.C..
MIDLAND FUNDING, LLC is the current owner
of this account. We are required to provide some additional
information pertaining to this account. Please keep this
information for your records.

Account Number at Charge-Off: XXXXXXXXXXX4160
Name of Creditor at Charge-Off: FIRST PREMIER BANK

ADDITIONAL ACCOUNT INFORMATION:

| | |
|---|---|
| Charge-Off Balance: | $663.94 |
| Post Charge-Off Interest Accrued: | $0 |
| Post Charge-Off Fees Accrued: | $0 |
| Post Charge-Off Payments & Credits: | $0 |
| Current Balance: | $565.46 |

Sincerely,

Law Offices Howard Lee Schiff, P.C. (866) 234-7606
Hours of Operation: 8:00 a.m. to 6:00 p.m.

CN-Z13232
PLEASE SEE REVERSE SIDE FOR IMPORTANT DISCLOSURE INFORMATION.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR

Ex. A at 1: Front of the February 12, 2016 Letter to Luis Garcia from Law Offices Howard Lee Schiff, P.C.

The back of the letter includes the text: "This is an attempt to collect a debt. Any information obtained will be used for that purpose." *Id*. It also includes an East Hartford, Connecticut address for "Mail[ing] Payments." *Id*.

```
You may request the following information by writing to us at:
Law Offices Howard Lee Schiff, P.C.
PO Box 280245 East Hartford, CT 06128

    Federal law prohibits certain methods of debt collection, and
requires that we treat you fairly.¦ You can stop us from
contacting you by writing a letter to us that tells us to stop the
contact or that you refuse to pay the debt.¦ Sending such a letter
does not make the debt go away if you owe it.¦ Once we receive
your letter, we may not contact you again, except to let you know
that there won't be any more contact or that we intend to take a
specific action.
If you have a complaint about the way we are collecting this debt,
please write to us at 510 Tolland St, East Hartford, CT-06108,
email us at Midcom@hlschiffpc.com, or call us toll-free at
(866) 234-7606 between 9:00 A.M. and 5:00 P.M. Eastern Standard
Time, Monday-Friday.
    The Federal Trade Commission enforces the Fair Debt Collection
Practices Act (FDCPA).¦If you have a complaint about the way we
are collecting your debt, please contact the FTC online at
www.ftc.gov; by phone at 1-877-FTC-HELP; or by mail at 600
Pennsylvania Ave., N.W., Washington, D.C. 20580.
Important Disclosure Information:
Please understand this communication is from a debt collector.
This is an attempt to collect a debt. Any information obtained
will be used for that purpose.
Calls to and/or from this company may be monitored or recorded.

1) An account statement or complete transactional history, as
applicable, reflecting your name, the last four digits of the
account number at the time of charge-off, and the charge-off
balance and/or claimed balance, excluding any post charge-off
payments; 2) A listing of all prior owners of this account and
transfer information; 3) Documentation evidencing the transfer of
ownership of the account to Midland Funding; 4) An account
statement reflecting purchase, payment or other actual use of the
account or a signed document reflecting the opening of the account
at issue; and 5) an explanation of how any amount we are seeking
to collect in excess of charge-off was calculated 6) if
applicable, the terms and conditions applicable to the account.

MAIL_PAYMENTS_AND/OR_CORRESPONDENCE_TO:
Law Offices Howard Lee Schiff, P.C.
PO Box 280245 East Hartford, CT 06128

CN-Z13232
2f CT
```

THIS COMMUNICATION IS FROM A DEBT COLLECTOR

Ex. A at 2: Back of the February 12, 2016 Letter to Luis Garcia from Law Offices Howard Lee Schiff, P. C., with stationery header removed

Because the letter contained balance amounts, Ex. A at 1, a mailing address for payments, and the statement "[t]his is an attempt to collect a debt," Ex. A at 2, the Court finds that "a consumer receiving the communication could reasonably interpret it as being sent in connection with the collection of a debt[.]" *Hart*, 797 F.3d at 225 ("An objective standard that determines the apparent purpose of a communication with an eye towards a consumer's understanding[.]") (*quoting Vincent v. The Money Store*, 736 F.3d 88, 98 (2d Cir.2013)). As a result, the letter is subject to the FDCPA. *Hart*, 797 F.3d at 225 ("[T]he FDCPA is 'remedial in nature, [and] its

terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.'")

**B.      The Two Balances**

The letter contains two different dollar amounts. Ex. A at 1. The amount $663.94 is listed as the "Charge-Off Balance" and the amount $565.46 is listed as the "Balance" and the "Current Balance." *Id.*

The parties agree that the letter contained two balances, only one of which was correct. Def. Post-Trial Findings ¶ 10; Pl. Post-Trial Opp. ¶ 10.

**IV.    CONCLUSIONS OF LAW: MATERIALLY MISLEADING STATEMENT**

**A.      Misleading Statement**

"The FDCPA is a strict liability statute[.]" *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 134 (2d Cir. 2017). "'Because the FDCPA is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.'" *Id.* (quoting *Vincent v. Money Store*, 736 F.3d 88, 98 (2d Cir. 2013).

To violate the FDCPA, a statement within a debt collection communication must be "false, deceptive, or misleading." 15 U.S.C. § 1692(e). A communication is considered "false, deceptive, or misleading" if the "least sophisticated consumer" would find it "open to more than one reasonable interpretation, at least one of which is inaccurate." *Easterling v. Collecto, Inc.*, 692 F.3d 229, 234–35 (2d Cir. 2012); *Avila v. Riexinger & Assocs., LLC*, 817 F.3d 72, 75 (2d Cir. 2016); *Clomon v. Jackson*, 988 F.2d 1314, 1319–21 (2d Cir. 1993) ("We also note that the language used in the collection letters was sufficient to cause the least sophisticated consumer to believe that Jackson himself had considered individual debtors' files and had made judgments about how to collect individual debts. The letters stated that Jackson was 'suggesting' certain

measures be taken 'to further implement the collection of your seriously past due account' . . . . This language was false or misleading because, as noted above, Jackson played virtually no day-to-day role in the debt collection process—and certainly did not engage in any discussion with NCB or AFP about how to collect Clomon's debt. Consequently, the facts of this case establish a violation of subsection (10) of § 1692(e)."); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ("[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.").

The Second Circuit's "least sophisticated consumer" standard is objective and based upon a hypothetical consumer. The least sophisticated consumer is "naïve . . . [but] possess[es] a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191, 193–94 (2d Cir. 2015). The threshold determination is "whether the hypothetical least sophisticated consumer could reasonably interpret the representation in a way that is inaccurate." *Arias*, 875 F.3d at 135–136 (internal quotations omitted); *Easterling*, 692 F.3d at 234–35 ("[The district court's focus on whether Easterling has received, or is likely to receive in the future, a discharge of her student loan debt is misplaced. The least sophisticated consumer test is an objective inquiry [.]").

The debt collection letter sent by the Schiff firm to Mr. Garcia contained two different balance amounts. Ex. A at 1. The amount $663.94 was listed as the "Charge-Off Balance" and the amount $565.46 was listed as the "Balance" and the "Current Balance." *Id*.

Defendant argues that the Balance/Current Balance amount "was the correct amount of Mr. Garcia's current balance," Tr. 74:12–23; Def. Post-Trial Findings ¶ 10, and that Mr. Garcia was not confused about what he owed, Tr. 27: 4–11; Def. Post-Trial Findings ¶¶ 11, 23.

Mr. Garcia argues that the differing balances could confuse the least sophisticated consumer. Tr. 6:23–25; 7:1; Pl. Post-Trial Opp at ¶¶ 9, 16.

The Court agrees.

The one-page debt collection letter sent to Mr. Garcia lists two different balances with no explanation for the difference and no definitions for terms such as "Charge-Off Balance" and "Current Balance." Ex. A at 1. While the two different balances, on their own, might confuse the least sophisticated consumer, it is the lack of an explanation for the different balances and the relevant industry terminology that is sufficiently misleading. *See Clomon*, 988 F.2d at 1319–21 ("We also note that the language used in the collection letters was sufficient to cause the least sophisticated consumer to believe that Jackson himself had considered individual debtors' files and had made judgments about how to collect individual debts."). A consumer in Mr. Garcia's position might believe that $663.94 would be necessary to satisfy his or her debt.[1] And, that reasonable interpretation would be inaccurate, and thus deceptive under the FDCPA. *See Russell v. Equifax A.R.S.*, 74 F.3d at 35 ('[A] collection notice is deceptive when it can be reasonably read to have two or more different meanings, one of which is inaccurate.'").

## B. Material Statement

Debt collectors are liable under the FDCPA only for material inaccuracies. The Second Circuit's definition of materiality balances "the need to protect unsuspecting consumers from unscrupulous debt collectors and the need to ensure that debt collectors are not held liable 'for unreasonable misinterpretations of collection notices.'" *Cohen v. Rosicki, Rosicki & Assocs.,*

---

[1] As the Court has previously explained, Mr. Garcia's interpretation of the letter is immaterial because he cannot stand in for the least sophisticated consumer. *Easterling*, 692 F.3d at 234–35 ("[T]he district court's focus on whether Easterling has received, or is likely to receive in the future, a discharge of her student loan debt is misplaced. The least sophisticated consumer test is an objective inquiry [.]").

*P.C.*, 897 F.3d 75, 86 (2d Cir. 2018); *Taylor v. Fin. Recovery Servs., Inc.*, 886 F.3d 212, 215 (2d Cir. 2018) ("That is, if a collection notice correctly states a consumer's balance without mentioning interest or fees, and no such interest or fees are accruing, then the notice will [not] be misleading within the meaning of Section 1692(e)[.]").

"The materiality inquiry focuses on whether the false statement would frustrate a consumer's ability to intelligently choose his or her response." *Cohen*, 897 F.3d at 86. "[M]ere technical falsehoods that mislead no one are immaterial and consequently not actionable under § 1692e." *Id.* (internal quotations and citations omitted).

Defendant argues that the "missing information relative to a payment which Mr. Garcia had made to Midland Funding" is not material. Def. Post-Trial Findings ¶ 23. Defendant further contends that it should not be punished for what amounts to a typographical error. *Id*. ¶ 22; Tr. 76:6–10.

Mr. Garcia argues that the misleading statement is material. Pl. Post-Trial Opp. ¶¶ 18, 20. The Court agrees.

While the Second Circuit strives to balance the interests of consumers and legitimate debt collectors, *Cohen*, 897 F.3d at 86, consumers must be able to determine what they owe. *See Taylor*, 886 F.3d 212 ("That is, if a collection notice correctly states a consumer's balance without mentioning interest or fees, and no such interest or fees are accruing, then the notice will [not] be misleading within the meaning of Section 1692(e)[.]"). If a consumer cannot determine the amount that would satisfy a debt, he or she might delay payment. *Cohen*, 897 F.3d at 86 ("The materiality inquiry focuses on whether the false statement would frustrate a consumer's ability to intelligently choose his or her response.") (internal quotation and citation omitted)).

Here, the difference between the two "balance" amounts was more than trivial. The Charge-off Balance exceeded the actual debt owed by nearly one-hundred dollars. Ex. A at 1. This misstatement could influence a consumer to delay payment. *Cohen*, 897 F.3d at 86 (explaining that if a consumer cannot determine the amount that would satisfy a debt, he or she might delay payment.). As a result, the Charge-Off balance in Defendant's letter was materially misleading in violation of the FDCPA. *Cohen*, 897 F.3d at 86 ("The materiality inquiry focuses on whether the false statement would frustrate a consumer's ability to intelligently choose his or her response."); 15 U.S.C. § 1692(e).

## V.     CONCLUSIONS OF LAW: BONA FIDE ERROR

Defendant asserts the bona fide error defense to the FDCPA. Def. Post-Trial Findings ¶ 13; 15 U.S.C. § 1692k(c).

To qualify for the bona fide error defense, a debt collector must prove "by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c).

### A.     First Prong of the Bona Fide Error Defense

Debt collectors can satisfy the first prong of the bona fide error test by demonstrating an unintentional clerical or factual error. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010) ("We therefore hold that the bona fide error defense in § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of the requirements of that statute.").

The parties agree that the different balances constitute an error. Def. Post-Trial Findings ¶ 13; Pl. Post-Trial Opp. ¶ 13. Nothing in the record supports a finding that Defendant intended

to send Mr. Garcia a letter containing a mistake. As a result, Defendant has satisfied the first prong of the bona fide error test.

### B.     Second Prong of the Bona Fide Error Defense

Debt collectors can satisfy the second prong of the bona fide error test by demonstrating that their "actions were objectively reasonable, and thus merit excuse from liability under the FDCPA." *Cerrato v. Solomon & Solomon*, 909 F. Supp. 2d 139, 147–48 (D. Conn. 2012) ("[A]ccording to Cerrato, Ms. Collins purposefully marked 'ONTC' only on account 58 because it was the only account listed, even though the February cease and desist letter referenced "all Citibank accounts."); *see also Silver v. Law Offices of Howard Lee Schiff, P.C.*, No. 3:09-CV-912 (PCD), 2010 WL 3000053, at *5 (D. Conn. July 28, 2010) ("[A] juror might conclude that the absence of the 'CN' or file number on Plaintiff's check was significant enough to characterize the misapplication of funds as reasonable and bona fide. Alternatively, the presence of the word 'Discover' on Plaintiff's payment to Defendant may be persuasive enough for a reasonable juror to determine that Defendant's error [in not applying the payment to Plaintiff's Discover account] was unreasonable."). "Among the factors pertinent to determining whether a debt collector's actions were reasonable is whether a collector has made such an error before." *Curto v. Palisades Collection, LLC*, 2011 WL 5196708 * 4 (W.D.N.Y. Oct. 31, 2011) ("Here, the record is silent as to whether Defendants have previously committed similar mistakes. Where the record is silent, 'a jury is entitled to decide whether reasonable procedures existed[.]'").

Defendant argues that it made a typographical error in Mr. Garcia's letter, and that it has not made errors of this sort in the past. Def. Post-Trial Findings ¶¶ 13–14.

Mr. Garcia argues that Defendant was sued for a similar violation in *Silver v. Law Offices of Howard Lee Schiff, P.C.* Pl. Post-Trial Opp. ¶ 12 (citing *Silver*, 2010 WL 3000053, at *1).

The Court disagrees, in part.

In *Silver*, the Connecticut Small Claims court entered two judgments against a plaintiff and ordered her to make $35.00 payments per week on each judgment. *Id*. at *1. The Schiff firm collected those payments. *Id*. One month, the plaintiff made two $50.00 payments by two separate checks. Id. She wrote "for credit to account # CNP65643" on one check and "for credit to account # Discover" on the other. *Id*. "Both of these payments, in error, were credited towards Plaintiff's balance on the RAB account." *Id*. The plaintiff contacted the Schiff firm several times about the error, and the error was not promptly remedied. *Id*.

While *Silver* was brought under the FDCPA, like Mr. Garcia's case, the similarities between the two cases end there. Unlike Mr. Garcia, the *Silver* plaintiff did not sue after receiving a misleading debt collection letter. Unlike Mr. Garcia, the *Silver* plaintiff sent checks to Defendant. *Id*. Unlike Mr. Garcia, the *Silver* plaintiff contacted Defendant regarding the alleged accounting error. *Id*. Unlike in Mr. Garcia's case, the central issue in *Silver* was whether the "misapplication of funds" to one of the plaintiff's accounts was a bona fide error. *Id*. at *5. As a result, the *Silver* case sheds no light on whether Defendant has previously sent a consumer a programmable form letter that misstated a balance. *Curto*, 2011 WL 5196708 * 4 ("Among the factors pertinent to determining whether a debt collector's actions were reasonable is whether a collector has made such an error before.").

While *Silver* is factually distinct from this case, the case demonstrates the sort of customer service judgment error that might excuse a Defendant from strict liability under the FDCPA. *Arias*, 875 F.3d 128, 134 ("The FDCPA is a strict liability statute[.]"). In *Silver*, a check processor had to determine which account—out of at least two—to credit when a debtor's check listed a credit card name rather than an account number. *Silver*, 2010 WL 3000053, at *5. ("[A]

17

juror might conclude that the absence of the 'CN' or file number on Plaintiff's check was significant enough to characterize the misapplication of funds as reasonable and bona fide."). Similarly, in *Cerrato*, "an administrative support clerk at Solomon . . . processed the cease and desist letter from Cerrato . . . . and noted that Solomon should cease and desist communication for account 92, but not the other Citibank accounts . . . because [92] was the only account number listed on the letter." *Cerrato*, 909 F. Supp. 2d at 141.

In contrast to *Silver* and *Cerrato*, the error in this case was caused not by administrative staff but by the programmer that designed Defendant's "electronic computer program, the AS400." Def. Post-Trial Findings ¶ 3; Tr. 65:11–14. That programmer had approximately two decades of experience programming for the firm. Tr. 64:3–4; Def. Post-Trial Findings ¶ 15.

In contrast to *Silver* and *Cerrato*, the programmer was not tasked with handling individual consumers' files. Rather, he was responsible for programming a two-page form letter. Ex A. The form letter contained five lines related to the amount owed. Ex. A. One of those lines, "Post Charge-Off Payments & Credits," should have reflected payments made to Defendant and its client. Tr. 134:11–13, 22–25. The programmer did not program the latter type of payments into the line. *Id.*, Def. Post-Trial Findings ¶ 4 ("When programming this letter, JD Gray was instructed to include all payments in the letter, which would include both payments which had been received by the defendant law firm and payments which may have been made post charge off to Midland Funding, LLC. Each of these categories of payments pull from different fields in the defendant law firm's computer system, and required the programmer to specifically program the letter to pull from both fields to show 'Post Charge-off Payments and Credits' in the letter.").

The programmer's error thus was not objectively reasonable under the FDCPA for four reasons. First, the programmer had experience in the field of programming and designed the

system that housed the data in question. Tr. 65:1–16; 76:5–25; 77:1–25; 78:1–6. Second, given that experience, the Schiff firm expected that the programmer could program two fields into the payments line. Tr. 80:7–16.[2] Third, that programming task involved no exercise of judgment with respect to individual consumers' files or consumers' communications with the Defendant. *Cf. Silver*, 2010 WL 3000053, at *5; *Cerrato*, 909 F. Supp. 2d at 141. Fourth, the missing field involved a material piece of information: payments. *Cf. Cohen*, 897 F.3d at 86 (reasoning that "the defendants' identification of Green Tree as the 'creditor'. . . was immaterial and therefore not actionable under § 1692e").

As a result, Defendant's failure to include payments to its client in a programmable field of the form letter sent to Mr. Garcia does not "merit excuse from liability under the FDCPA." *Cerrato*, 909 F. Supp. 2d at 147–48 ( explaining that debt collectors can satisfy the second prong of the test by demonstrating that their "actions were objectively reasonable").

### C.    Third Prong of the Bona Fide Error Defense

Debt collectors can satisfy the third prong of the test by showing that their procedures constitute "reasonable precaution(s)" against error. *Dimovski v. Tolisano & Danforth, LLC*, 2011 WL 1638051, at *4–5 (D.Conn. Apr. 29, 2011) ("In his deposition, Danforth testified that the firm organizes its files so that all of the pleadings are on one side, and all of the correspondence and payments are on the other. The secretary is then able to fill out the execution form while referencing the sheet containing the relevant information to ensure that no mistake is made. However, Tolisano & Danforth do not have any written guidelines, and there is no evidence that the secretaries are trained on how to properly fill out execution forms. Based on this limited

---

[2] Ms. Wisniowski similarly testified about the deep knowledge, experience, and reputation of the executive committee that supervised the creation of this form template. Tr. 60:7–12; 68:19–25; 116: 6–14. As a result, the failure of that committee to ensure that two typical types of payments were included in the letter would also constitute an unreasonable error.

evidence, and drawing all reasonable inferences in favor of the appropriate party when ruling on both parties' Motions, the court cannot determine as a matter of law whether or not the procedures maintained by Tolisano & Danforth were reasonably maintained to prevent clerical errors on execution forms.") (internal citations omitted).

Defendant argues that it had "numerous procedures and policies in place . . . to avoid such an error[.]" Def. Post-Trial Findings ¶ 13.

Plaintiff argues that Defendant failed to produce its 2016 policies and procedures, Pl. Post-Trial Opp at ¶ 14, and that it did not have reasonable procedures in place to prevent such mistakes. *Id*. ¶¶ 13–14.

The Court agrees.

Defendant did not submit its 2016 policies and procedures.[3] Pl. Post-Trial Opp at ¶ 13. Rather, Ms. Wisniowski testified about the policies and procedures used to generate a populated form letter like the one Mr. Garcia received. Tr. 132: 9–11.

Ms. Wisniowski testified that a managing attorney starts the drafting process for a new form, or template letter. Tr. 116:7–8; Tr. 124:5. The form letter is then reviewed by the executive committee. Tr. 116:6–13. Then, the form letter is sent to the information technology department. Tr. 116:8–14. A computer programmer creates a program to extract information from the case management system into the form letter. Tr. 116:14–17. The case management system has separate fields for different data points, including payments made to Defendant's client and payments made directly to Defendant. Tr. 76:23–25, 77:1–25; 77:1–6.

---

[3] A day or two before trial, Defendant sent to Plaintiff, by e-mail, a copy of its policies and procedures exhibit. Tr. at 2:25; 3:1. The exhibit was not a copy of Defendant's 2016 policies and procedures. Tr. 3:16–18. Rather, it was allegedly a "living document[]" that included some or all of the 2016 policies and procedures. Tr. at 3:25; 4:1. Plaintiff objected to the exhibit because he had not had a chance to review it. Tr. 5:10–12. After considering the exhibit in the context of Defendant's testimony, the Court ruled that the document would not be admitted but that Ms. Wisniowski could testify regarding Defendant's 2016 policies and procedures. Tr. 115:6–13.

After a programmer has programmed a form letter, Defendant tests the letter to determine

if the program is typically populating letters with the correct information. Tr. 116:18–21; 134:5–

10. Individual letters are then generated automatically by a computer. Tr. 124:14–16; Tr. 132:2–

7.[4] Letters are printed and mailed to consumers by a letter vendor. Tr. 73:2–12.

Ms. Wisniowski testified that she and other employees performed a root cause analysis to

determine why Mr. Garcia's letter contained a mistake. Tr. 80:10–12; 85:14–17. That analysis

suggested a programming error had occurred, and that the field for payments to the client was

missing from the form letter. Tr. 80:10–16; 85:20–25.

Debt collectors can satisfy the third prong of the bona fide error test by showing that their

procedures constitute "reasonable precaution(s)" against error. *Dimovski*, 2011 WL 1638051, at

*4–5. Defendant has not made such a showing.

As explained above, Mr. Garcia's letter was neither lengthy nor complex. The letter

contained only five lines of balance and payment information. Though the Court finds Ms.

Wisniowski's testimony regarding Defendant's testing procedures credible,[5] those procedures do

not constitute reasonable precautions against this specific mistake.

Defendant's testing did not reveal that one of two types of payments was missing from

the form letter. Moreover, Defendant had no procedures for detecting mathematical failures, such

as the one in Mr. Garcia's letter. A simple addition and subtraction program would have revealed

that $663.94 minus zero did not equal $565.46.[6] It is not unreasonable to assume that

Defendant's experienced programmer could address and thus avoid these basic mathematical

---

[4] Ms. Wisniowski testified that Mr. Garcia's letter was one of thousands of letters sent out under Defendant's contract with Midland Funding, LLC. Tr. 132:9–11.

[5] *See, e.g.*, Tr. 86:5–10 (testimony that, at some point, Ms. Wisniowski checked her complaint management system for complaints related to this particular form letter and found none).

[6] *I.e.*, The Charge-Off Balance minus interest, fees, and credits, resulting in the Current Balance

errors. In any event, reasonable testing procedures would have caught the missing payments field.

Defendant knew that debtors make payments to their creditors. Defendant captured this information in its case management system. Tr. 80:10–16; 85:20–25. Defendant knew that the information should have been programmed into its form letter. *Id*. Yet, Defendant did not catch the omission, and has not explained how its testing procedure—not its programmer—failed to catch the error in the form letter at issue.

As a result, Defendant has not shown that its procedures constitute "reasonable precaution(s)" against error. *Dimovski*, 2011 WL 1638051, at *4–5 ("However, Tolisano & Danforth do not have any written guidelines, and there is no evidence that the secretaries are trained on how to properly fill out execution forms. Based on this limited evidence, and drawing all reasonable inferences in favor of the appropriate party when ruling on both parties' Motions, the court cannot determine as a matter of law whether or not the procedures maintained by Tolisano & Danforth were reasonably maintained to prevent clerical errors on execution forms.").

Defendant therefore is not entitled to the bona fide error defense to the FDCPA.

## VI. DAMAGES

Mr. Garcia seeks actual damages under 15 U.S.C. § 1692k(a)(1), statutory damages under 15 U.S.C. § 1692k(a)(2)(A), attorney's fees and costs under 15 U.S.C. § 1692k(a)(3), and "any such other and further relief, as well as further costs, expenses and disbursements of this action as this Court may deem just and proper." Compl. at 3.

## A. Actual Damages

A debt collector who fails to comply with the FDCPA is liable for "any actual damage sustained by such person as a result of such failure," 15 U.S.C. § 1692k(a)(1); *Miller v. Midpoint Resolution Grp., LLC*, 608 F. Supp. 2d 389, 394 (W.D.N.Y. 2009) ("In this case, it appears that many of plaintiff's emotional issues predated her dealings with Constantine, and the objective medical evidence in support of her claim is slim . . . . Nevertheless, I credit plaintiff's testimony that she did suffer some emotional distress as a result of Constantine's (and therefore Midpoint's) violations of the FDCPA. Accordingly, I find that plaintiff is entitled to $500 in actual damages.")

At trial, Mr. Garcia testified that he had suffered no actual damages as a result of the Schiff firm's letter. Tr. 21:12–14; 23:7–17.

Accordingly, the Court awards no actual damages under 15 U.S.C. § 1692k(a)(1).

## B. Statutory Damages

A debt collector who fails to comply with the FDCPA is liable for additional damages up to $1,000. 15 U.S.C. § 1692k(a)(2)(A). "The decision on whether to award 'additional damages' and on the size of any such award is committed to the sound discretion of the district court." *Clomon*, 988 F.2d at 1322. "In setting the appropriate level of statutory damages, the FDCPA 'directs the court to consider the following factors: 'the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional,' as well as any other factors that are relevant.'" *Weiss v. Zwicker & Assocs., P.C.*, 664 F. Supp. 2d 214, 218 (E.D.N.Y. 2009) ((quoting *Sparkman v. Zwicker & Associates, P.C.*, 374 F.Supp.2d 293, 302 (E.D.N.Y. 2005) and 15 U.S.C. § 1692k(b)(1)); *id.* ("In the instant case, there is no pattern of noncompliance on the part of

Zwicker. In fact, the Court found only one technical violation of the statute in the March 26th Letter. There is also no evidence that the violation was intentional. Moreover, the letter was not threatening in tone and the Plaintiff suffered no actual damages. Under the circumstances, the Court finds that an award of statutory damages in the amount of $500 is appropriate and comports with statutory damages awarded in comparable FDCPA cases."); *Savino v. Computer Credit, Inc*., 164 F.3d 81, 86 (2d Cir. 1998) (("In concluding that Savino was entitled to an award of $500.00, the district court noted its conclusion that the August 14 letter violated the FDCPA but also found that the notice was not threatening or abusive in tone. In addition, the court found that there was no evidence that CCI's noncompliance was intentional. Because the district court's stated reasons for its award of statutory damages comport with *Clomon*, the court did not abuse its discretion in its award to Savino.") (internal citations omitted)); *Cole v. Truelogic Financial Corp*., 2009 WL 261428, *2–3 (W.D.N.Y.2009) (awarding $500 in statutory damages for a single intentional violation of the Act and explaining "that the Fifth Circuit and the Seventh Circuit approach the award of costs and attorney's fees differently than the Second Circuit. For example, the Fifth Circuit declines to award costs and attorney's fees when the plaintiff is unable to prevail on his [or her] claim for actual and additional damages . . . . However, this Court awards Plaintiff $500 [as] this Court is bound to follow the precedent of the Second Circuit.").

The parties agree that the Schiff firm sent a single letter containing two different balances to Mr. Garcia. Def. Post-Trial Findings ¶ 13; Pl. Post-Trial Opp. ¶ 13. Nothing in the record suggests that the Schiff firm intended to send Mr. Garcia a letter containing a mistake, nor that the letter was threatening, nor that the mistake was repeated in a subsequent letter or telephone call to Mr. Garcia.

Because the Schiff firm violated the FDCPA, the Court grants Mr. Garcia's request for statutory damages under § 1692k(a)(2)(A). Because Mr. Garcia received only one non-threatening letter containing an unintentional mistake (i.e., a missing payments field), the Court awards Mr. Garcia only $500 in statutory damages. *Savino*, 164 F.3d at 86 (("In concluding that Savino was entitled to an award of $500.00, the district court noted its conclusion that the August 14 letter violated the FDCPA but also found that the notice was not threatening or abusive in tone. In addition, the court found that there was no evidence that CCI's noncompliance was intentional. [T]he court did not abuse its discretion in its award to Savino.").

## C.    Costs and Attorney's Fees

"Where a plaintiff prevails [under the FDCPA], whether or not [s]he is entitled to an award of actual or statutory damages, [s]he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court." *Savino*, 164 F.3d at 87; *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 95 (2d Cir. 2008) ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs[.]");[7] 15 U.S.C. § 1692k(a)(3). When determining attorney's fees, "a district court should consider the rate [a] reasonable, paying client would pay, and use that rate to calculate the presumptively reasonable fee." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 193 (2d Cir. 2008) ("For the foregoing reasons, we agree with plaintiffs that the district court may have applied the forum rule too strictly. They suggest that the district court calculated the presumptively reasonable fee (on the basis of in-district rates) and then queried whether the plaintiffs had shown sufficient cause to rebut the presumption that it was, in fact, the ultimate

---

[7] The Court notes that *Jacobson* is factually inapposite to this case as it dealt with a fee award to a defendant under the FDCPA. *Jacobson*, 516 F.3d at 95.

reasonable fee. However, we find no error in the district court's fee award, even when evaluated under the analysis we use.").

As the prevailing consumer, Mr. Garcia is entitled to an award of reasonable costs and attorney's fees. *Savino*, 164 F.3d at 87 ("Where a plaintiff prevails [under the FDCPA], whether or not [s]he is entitled to an award of actual or statutory damages, [s]he should be awarded costs and reasonable attorney's fees in amounts to be fixed in the discretion of the court."); *Jacobson*, 516 F.3d at 95 ("The FDCPA provides for fee-shifting as a matter of course to successful plaintiffs[.]"); 15 U.S.C. § 1692k(a)(3).

Accordingly, Mr. Garcia may seek costs and attorney's fees.

### D. Other Relief

The FDCPA does not provide declaratory or injunctive relief. *See Milton v. Rosicki, Rosicki & Assocs., P.C.*, No. 02-CV-3052 (NG), 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007) ("The FDCPA does not contain an express provision for declaratory or injunctive relief, and therefore courts have found injunctive relief unavailable to individuals under this statute. Accordingly . . . to determine whether Rosicki's Rule 68 Offer of Judgment provides Mr. Milton complete relief under 15 U.S.C. § 1692(k), the court must analyze only additional damages, attorney's fees, and actual damages to decide if Mr. Milton could possibly obtain more than $5000.00.").

Mr. Garcia has not specified the "other and further relief," Compl. at 3, he seeks. Even if he had, the Court likely could not grant him relief beyond actual and statutory damages, costs and attorney's fees. *See Milton, P.C.*, 2007 WL 2262893, at *3 (holding that the "the court must analyze only additional damages, attorney's fees, and actual damages to decide if Mr. Milton could possibly obtain more than $5000.00").

Accordingly, Mr. Garcia's request for "other and further relief" is denied.

## VII.   CONCLUSION

For the reasons discussed above, the Court finds that Defendant sent a materially misleading letter to Mr. Garcia in violation of the FDCPA, and that Defendant is not entitled to the bona fide error defense to strict liability under the FDCPA.

Accordingly, the Court **ORDERS** Judgement for Mr. Garcia and **AWARDS** $500 in statutory damages, but **DENIES** any other relief, except for attorney's fees and costs.

Mr. Garcia may file a motion for attorney's fees and costs by **August 30, 2019**.[8] Defendant may respond by **September 20, 2019** and any reply to any response shall be due by **September 27, 2019**.

The Clerk of the Court is directed to enter Judgment for Mr. Garcia and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 15th day of August, 2019.

       /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[8] The Court *sua sponte* extends the time period for filing this motion under its inherent authority to manage this case to an expeditious resolution.  *See Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016).