UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| LUIS GARCIA<br>　　Plaintiff | CIVIL ACTION NO. 3:16 CV 00791 VAB |
| vs | |
| LAW OFFICES HOWARD LEE SCHIFF P.C.<br>　　Defendant | SEPTEMBER 20, 2019 |

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Defendant Law Offices Howard Lee Schiff P.C. ("Schiff Law Office") respectfully submits this Memorandum of Law in opposition to the plaintiff's Motion for Attorneys' Fees and Costs dated August 30, 2019:

### I.　HISTORY OF THE CASE

This action commenced by the plaintiff alleges that plaintiff received a collection letter dated February 12, 2016 ["the February 12 letter"] which contained information regarding the balance due on his First Premier Bank Visa account now owned by Midland Funding LLC. According to plaintiff, the letter shows the charge off balance as $633.94 and the current balance as $565.46 "without any proper explanation." *See Complaint ¶s 9, 10 and 11.* Based upon these allegations, plaintiff originally alleged that the Schiff Law Office violated the FDCPA, and specifically, 15 U.S.C. §§ 1692d, 1692e, 1692e(2), 1692e(5), 1692e(7), 1697e(8), 1692e(10), 1692f and 1692f(1), and sought damages under the provisions of 15 U.S.C. § 1692k. *Id. at ¶17 and 18 and Prayer for Relief.*

Defendant filed a Motion to Dismiss the complaint. This Court subsequently ruled on the Motion to Dismiss on March 30, 2017—dismissing **a majority** of the plaintiff's claims. Plaintiff's claims under 15 U.S.C. §§ 1692d and 1692f were not even briefed by plaintiff's counsel in his opposition of the Motion to Dismiss, and they were dismissed. This Court also concluded that plaintiff failed to state claims under 15 U.S.C. §§ 1692e(2), 1692e(5), 1692e(7) and 1692e(8). **Exhibit 1.**

1

Plaintiff's counsel used a "form" complaint and devoted little time to drafting the complaint to properly address the facts in this case. Moreover, it is clear that plaintiff's counsel did not devote sufficient time to the opposition to the motion to dismiss to address the issues raised. Rather than voluntarily remove those allegations from the Complaint, he forced this Court to rule on the motion to dismiss resulting in the dismissal of most of the allegations.

These vagrancies on behalf of plaintiff continued. Requests for Admissions, Interrogatories and Requests for Production were served by defendant on May 17, 2017. They were not answered, and no motion for extension of time was filed. Defendant filed a Motion for Summary Judgment by date of July 7, 2017 based upon the fact that the Requests for Admissions had been deemed admitted. Plaintiff's counsel then sought to amend or correct the responses. It was not until this Court's ruling on February 21, 2018 that plaintiff even made an attempt to respond to the Requests for Admissions, Interrogatories and Requests for Production were not received by defendant's counsel until March 19, 2018. **Exhibit 2.**

At the Settlement Conference scheduled by The Honorable Holly Fitzsimmons, Mr. Saks attended the Conference without his client, notwithstanding the Court's specific instruction that clients were required to attend. **Exhibit 3.** Judge Fitzsimmons asked why Mr. Garcia was not in attendance. Mr. Saks represented to the Court that he was "working" and unable to attend the Settlement Conference. This representation proved to be inaccurate. At his deposition of Mr. Garcia, he disclosed that he was not working because he has suffered from a disability since 2014. **Exhibit 4, Deposition of Luis Garcia on September 6, 2017** at 37-39. In fact, Mr. Garcia had not been aware of the Settlement Conference. *Id.* Thus, Mr. Saks misled to this Court about the reason for Mr. Garcia's absence and plaintiff's noncompliance with the Court's order.

Before trial, when the Court's order clearly stated that the Joint Trial Memorandum was due on January 28, 2019, plaintiff's counsel failed to contact the undersigned about it. The undersigned drafted all of the Joint Trial Memorandum, except for the portions which had to be completed by plaintiff's counsel, and faxed it to Mr. Saks to insert his portions on January 25, 2019. **Exhibit 5.** The majority of the work was done by defendant's counsel.

After trial, this Court found that there was a violation of the FDCPA, but did not award plaintiff the maximum fine—Mr. Garcia was awarded $500.00. Mr. Saks now seeks attorney's fees and costs in the sum of $67,707.50. *Declaration of Saks at ¶6.* However, he then states that he requests a fee of $59,012.50. *Id. at ¶12.*

In light of the vagrancies of opposing counsel coupled with plaintiff's counsel's refusal to settle this case for a reasonable amount throughout, it is completely outrageous that Mr. Saks represents that he has $67,707.50 in attorney's fees and costs. This is a case where the plaintiff's counsel exploited what can only be viewed as a minor,[1] technical violation of the law to bring a case against the Schiff Law Office, and make arbitrary demands for sums of money irrespective of his client's interests in order to earn far more in attorney's fees then his client will ever collect.[2]

## II. ARGUMENT

### A. Plaintiff's Counsel's Request for Attorney's Fees is Outrageous and Unsupportable.

The FDCPA provides for an award of costs and "a reasonable attorney's fee as determined by the court" in the case of any successful action to enforce liability under the FDCPA. When determining attorneys' fees, Courts in this district consider "case-specific variables" that have been identified as relevant to the issue of reasonableness in setting hourly rates. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty of Albany and Albany Cnty Bd of Elections,* 522 F.3d 182, 190 (2nd Cir. 2008).

"The reasonable hourly rate is the rate a paying client would be willing to pay." When determining what rate a paying client would be willing to pay, Courts consider the following:

(1) what a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively; and

---

[1] At the beginning of this case, Mr. Saks admitted to the undersigned that this was "not the best case." Yet, at every turn, he refused to settle for a reasonable amount.

[2] Mr. Garcia testified at his deposition that he was never informed of offers to settle this case by plaintiff's counsel, and indeed, he would have accepted them had he been informed. **Exhibit 4** at 19, 36, 39, 49-50.

3

(2) what an individual might be able to negotiate with his or her attorneys, using their desire to obtain the reputational benefits that might accrue from being associated with the case.

*Id., 522 F. 3d at 190.*

The Court then uses that reasonable hourly rate to calculate what can properly be termed the "presumptively reasonable fee." *Id.* To calculate the "presumptively reasonable fee," the Court multiplies "the reasonable hourly rate by the number of hours reasonably expended and adjust that amount to arrive at the final fee award and use the Arbor Hill/Johnson factors to analyze the reasonableness of that award." *See Silver v. Law Offices Howard Lee Schiff, P.C., 2010 WL 5140851, at *1 (D. Conn. Dec. 16, 2010).*

This Court also adjusts the fee based on the success of the prevailing party. *Id. (citing Adorno v. Port Authority of New York and New Jersey, 685 F. Supp. 2d 507, 511 (S.D.N.Y. 2010); Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 123, 151 (2d Cir. 2008), relying upon Johnson v. Ga. Highway Express, Inc., 488 F. 2d. 714 (5th Cir. 1974) abrogated on other grounds by Blanchard v. Bergeron, 489 U.S. 87, 92-93, 96 (1989).*

In the present case, nothing has been presented to show what Mr. Garcia would have paid as an hourly rate because Mr. Saks has failed to provide his agreement with Mr. Garcia. In fact, at his deposition, Mr. Garcia testified under oath that he did not have an agreement with Mr. Saks at all. **Exhibit 4** at 16, 52-53. In fact, Mr. Garcia had no discussion about attorney's fees being paid to Mr. Saks. *Id.* at 51.

Rule 1.5(b) of the Professional Rules of Conduct require that the "basis or rate of the fees and expenses for which the client will be responsible, shall be communicated to the client in writing, before or within a reasonable time after commencing the representation..." Mr. Saks is not entitled to any fees in this case since he was not properly engaged by Mr. Garcia under the Professional Rules of Conduct. Moreover, there is nothing to show what rate Mr. Garcia would have paid for his services, as required to determine the reasonable hourly rate.

Moreover, even if this Court were to consider the rates claimed by Mr. Saks here, these rates would have been adjusted given the plaintiff's counsel's limited success. The maximum fine under the

FDCPA is $1000. 15 U.S.C. §1692k. In this case, Mr. Garcia was awarded *half* of the statutory maximum fine--$500. Therefore, any attorney's fees awarded would be cut in half given that plaintiff's counsel was only 50% successful.

### B. Plaintiff's Counsels' Hourly Rates are Unreasonable.

"Reasonable hourly rates 'are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'" *Cabala v. Morris, Docket No. 3:09 cv 651 (VLB) (D. Conn.; August 24, 2012), quoting Blum v. Stenson, 465 U.S. 886, 895 (1984).* "The determination of a prevailing rate requires a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel." *Id., quoting M.K. ex rel. K. v. Sergi, 578 F. Supp. 2d 425, 427 (D. Conn. 2008) (quoting Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005).*

Mr. Saks claims $400/hour as his hourly rate given his "experience and level of expertise in FDCPA litigation.[3] Joanne Faulkner who has had many more years of experience (over 35) compared to Mr. Saks' nine (9) years, and is a "nationally-recognized expert" in the FDCPA, has been allowed $350/hour. *See Rousseau v. Morris, Docket No. 3:11 cv 01794 (SRU) (D. Conn., March 11, 2014).* More recently, Ms. Faulkner has been allowed $400 per hour. *See Pape v. Law Offices of Frank N. Peluso, P.C., Docket No. 3:13 cv 65 (JGM) (D. Conn., February 25, 2016).* Therefore, based upon this alone, Mr. Saks' rate is patently unreasonable—he has no where near the experience and stature of Ms. Faulkner.

Mr. Saks has been admitted since 2010—9 years. He provides nothing to support his claim of experience other than a general statement that he has spent "the vast majority of his career practicing consumer litigation." *See Saks Declaration at 3.* Nor is Mr. Saks the most reputable attorney. In 2017, he filed an FDCPA lawsuit in the Western District of Arkansas. In that case, the plaintiff was deposed, and he testified under oath that Mr. Saks firm recruited consumers through an entity called "Consumer Shield 360." Consumer Shield 360 signed up clients without any interview or conflicts check with a

---

[3] The "Declaration of Yaakov Saks" was prepared for filing in the "United States District Court for the District of *New Jersey.*" Mr. Saks is clearly using form pleadings, but yet billing for preparing these pleadings as if he is drafting them from scratch. *See Itemization, Exhibit A to Declaration of Saks, Entry on 8 27 19 for 5.50 hours "Draft/revise motion for fees."*

5

retention agreement which limits the consumer's recovery to $200. Shortly after this deposition, plaintiff's counsel voluntarily dismissed the case. A copy of the deposition without the exhibits is attached as **Exhibit 6.**

In 2016, Mr. Saks commenced another FDCPA lawsuit on behalf of a consumer in the Southern District of Florida. The case resulted in a judgment for the defendant—in large part because Mr. Saks was unable to explain why a dispute letter allegedly sent to the defendant did not match a copy of the letter which the consumer said was sent to the defendant. A copy of the District Court's judgment in that case is attached hereto as **Exhibit 7.**

In 2017 in yet another case brought by Mr. Saks' firm in Maryland, the District Court judge dismissed the complaint noting that it was virtually identical to complaints filed in other districts which had been dismissed. "In this case, the Court is faced with a horse that was led to water and refused to drink…" **Exhibit 8,** *Piper v. Meade & Associates, Inc., Docket No. 17 cv 863 (D. Maryland; October 10, 2017) at 4.* [4]

Therefore, Mr. Saks is clearly not an attorney who would warrant being paid $400/hour, and certainly would not be paid at that rate in Connecticut.

Mr. Saks includes billable time for Raphael Deutsch. *See Declaration of Raphael Deutsch.* Mr. Deutsch did not even work at the Saks Stein law office in September of 2017 when Mr. Garcia was deposed—he was then employed by The Law Offices of Raymond J. Antonacci LLC in Waterbury, Connecticut. However, Mr. Deutsch presents billable time for his appearance the deposition. *See Exhibit A to Declaration of Yaakov Saks, "Time and Expense Charges – Itemized" [hereinafter referred to as "Itemization"], 9 5 17 Entry for 1.20 hours for "Communicate (with client)-prep client for deposition" and subsequent entries on 9 6 17 totaling 2.9 hours for "drive to" and "drive from" deposition and attending the deposition.* None of this time should be allowed because, again, no fee agreement has been presented showing that Mr. Garcia agreed to pay Mr. Deutsch for his time. Moreover, Mr. Saks is

---

[4] Local counsel appeared in this case on behalf of RC Law Group PLLC for the plaintiff in this action—Mr. Saks' law firm before he formed SteinSaks PLLC.

attempting to recover attorney's fees for an attorney who did not even work for plaintiff's counsel at the time of alleged services.[5]

Further, neither Mr. Deutsch nor Mr. Saks prepared Mr. Garcia for his deposition in any meaningful way. Indeed, Mr. Garcia had not seen the complaint or the discovery requests before that day. Mr. Deutsch—who has had no FDCPA experience prior to this case[6]—requests a rate of $350/hour. Again, such a rate is patently unreasonable request given this attorney's inexperience and limited involvement in this case.

Next, Ms. Drake requests a fee of $350/hour. *Declaration of Rachel Drake at ¶5*. Ms. Drake filed an application to appear *pro hac vice* on May 17, 2019. The Motion was granted by the Court on May 18, 2019, but Ms. Drake never filed an appearance in this case.

At the time of trial, Ms. Drake was learning how to try cases. She claims only 3 years of experience in FDCPA litigation. *Id. at ¶4*. Ms. Drake's billing is also overstated. For example, the Itemization shows entries on 1 30 19 and 1 31 19 for time totaling 3.3 hours for "Draft/Revise joint trial memo and communicate with defendant regarding the specifics of the memo" and "Draft/revise and finalize with Yaakov and defense counsel the joint trial memo." The undersigned drafted the Joint Trial Memorandum—which was apparently forgotten by plaintiff's counsel until January 25, 2019 when the undersigned fax the draft to plaintiff's counsel. **Exhibit 5.** Because it had been substantially drafted by the undersigned when it was sent to plaintiff's counsel, very little time and effort was needed to complete the Joint Trial Memorandum, and certainly not 3.3 hours claimed by Ms. Drake.

Mr. Saks seeks an award of $175/hour for his paralegal. Most of the tasks that are billed for the paralegal are clerical tasks. *See, e.g., Entry on 3 8 16 "Manage files" "Manage data/files-make case and enter retainer."* As a general rule, attorneys do not normally bill clerical or administrative tasks to paying clients, and may not recover such fees through a fee petition. *Bilazzo v. Portfolio Recovery Associates LLC, 876 F. Supp. 2d 452, 471-72 (D.N.J. 2012) (quotations omitted).* Administrative tasks

---

[5] Mr. Deutsch did not file notice that he was affiliated with SteinSaks PLLC until *May 13, 2019.*

[6] Mr. Deutsch simply states, "I am experienced in Fair Debt Collection Practices Act litigation." *See Declaration at ¶4.* Nothing more is provided to support any claim of experience in such matters.

generally include matters such as opening files, entering case data, copying documents, confirming information, and speaking to the court. *Id.* The tasks here are certainly administrative, and are not allowable here.

Mr. Saks has provided this Court nothing to support that the rates he requests are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." There is nothing to support the "case-specific inquiry into the prevailing market rates for counsel of similar experience and skill..." Therefore, the Court cannot accept the hourly rates that he has claimed here.

If Joanne Faulkner's $400/hour rate is considered reasonable for a nationally recognized expert on the FDCPA with over 30 years of experience handling FDCPA cases, then it makes no sense to allow Attorney Saks with 9 years of experience and a less than clean reputation to charge $400/hr.[7] Instead, defendant believes that Mr. Saks' hourly rate should be no more than $200/hour, and Mr. Deutsch and Ms. Drake should be allowed $150/hour.

Moreover, from the Itemization provided, Mr. Saks handled the majority of work on this file so that he could bill at a higher rate—when it is clear that these tasks could have and should have been delegated to a more junior attorney or a paralegal at a lower rate. For example, the entry on 6/30/16 for "Manage Files" and "Manage data/files-file memorandum in opposition to MTD." Mr. Saks is billing $120 for filing his opposition to the motion to dismiss which is a clerical task. He indicates that this took .30 hours or 18 minutes. It is difficult to imagine how filing a memorandum in opposition could take 18 minutes when it should take under 5 minutes to enter the PDF in the CM ECF System. No client would pay an attorney to handle clerical functions. Therefore, not only should these "Manage Files" entries should not be allowed, but the Court should consider that a lower billable rate should be applied to many of these entries.

---

[7] In his Declaration, Mr. Saks states that his hourly rate is $400 per hour. *See Declaration of Saks at ¶5.* However, it should be noted that for the Itemization Entry on 8 16 18, Mr. Saks shows a $250/hour rate. This seems to suggest that Mr. Saks' hourly rate is not $400/hour as he claims.

8

Mr. Saks has also charged for non-legal services. On 7 6 17 and 12 12 18, he has entries of 1.50 and 2.00 for drive to court and 1.50 and 1.60 for drive back from court. These are not legal services. The fact that Mr. Saks is an out of state attorney (Hackensack, New Jersey) should have no bearing on this case, and he should not be permitted to pass the expense of doing business in Connecticut to the defendant.

Similarly, Mr. Saks and Ms. Drake have entries on 5 19 19 for 1.80 and 1.50 hours for "drive to Hotel in prep for trial next morning." On 5 20 19, they have entries of 1.50 and 1.90 for the drive back from court. Again, the expense of Mr. Saks doing business in Connecticut should not be passed on to the defendant.[8]

Further, Ms. Drake's presence at trial was unnecessary and excessive.[9] There was no reason for such a simple case to have two attorneys for the plaintiff. However, it was clear during trial that Mr. Saks was using this case as a training experience for Ms. Drake. Defendant has no objection to that but it is unreasonable to ask defendant to pay for travel and 3 hours of training for Mr. Saks' associates. These should be eliminated from his bill.

Plaintiff claims that he and his firm devoted 80.60 hours to this case. He does not provide a break down of the time per attorneys or staff. However, Ms. Drake claims that her time at $350/hour is $6230.00. This would mean that she is claiming 17.8 hours of the 80.60. Mr. Deutsch claims $1190 at $350/hour. This would mean that he is claiming he devoted 3.4 hours to this case. The paralegal, Ms. Padron claims $270 or at $175/hour that would mean 1.5 hours devoted to this case. Adding these together, the attorneys and staff other than Mr. Saks devoted 22.7 hours to this case, leaving the balance of 57.9 must be the time claimed by Mr. Saks.

Using the presumptively reasonable rates, the fees should be calculated as follows:[10]

---

[8] Mr. Saks has also added to his expenses the cost of appearing pro hace vice for Ms. Drake of $75.00—even though Ms. Drake never filed an appearance in this case. Moreover, he has requested $400.00 for hotel rooms. These are not costs which are legitimately passed on to the defendant. If Mr. Saks decided to do business in another state—rather than have local counsel who could handle the case for much less, he should bear the costs associated with his choice.

[9] In fact, Ms. Drake never filed an appearance in this case.

[10] Mr. Deutsch's time and Ms. Padron's time were not included in this calculation because they are not proper claims here.

9

| Mr. Saks | 48.00[11] hours at $200/hour | $9,600.00 |
| Ms. Drake | 11.40[12] hours at $150/hour | 1,995.00 |
| | TOTAL | $ 11,595.00[13] |

### C. The Time Claimed to Have Been Devoted to this Case is Excessive.

"The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994)*. Here Attorney Saks has submitted billing records for 80.60 hours of work. *See Itemization at unnumbered page 8.* The time records provided here are not detailed indicating that "the nature and relevance of the work performed which evince a high degree of efficiency." *Lunday, supra.*

When considering a request for attorney's fees, a district court must "'decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those hours that are excessive, redundant, or otherwise unnecessary." *Interfaith Cmty. Org. v. Honeywell Intern., Inc., 426 F.3d 694, 710 (3d Cir. 2005) (quotations omitted); see also Williams v. NCO Fin. Sys., Inc., No. CIV.A. 10-5766, 2011 WL 1791099, at *6 (E.D. Pa. May 11, 2011) ["In response to the specific objections made by a party opposing the award of fees and costs, a court must conduct a 'thorough and searched analysis' to identify charges that should be excluded"].* Moreover, defendant cannot be billed for time which could not be billed to a client.

Defendant generally objects to the amount of time claimed to have been devoted to this case. However, the following are specific charges which must be removed as excessive:

---

[11] This number has been reduced by 9.90 hours which represents the travel time that appears on the Itemization as set forth above.

[12] This number has been reduced by 3.40 hours which represents the travel time that appears on the Itemization as set forth above. It has further been reduced by 3.00 hours for the trial time claimed on the Itemization.

[13] Defendant does not agree that this is the amount due plaintiff's counsel. This number is only the first step in the calculation of the fees using the presumptively reasonable rates analysis.

10

(1) *The Complaint:* It is clear that the complaint was not carefully, effectively or efficiently drafted, and certainly could not have taken 3.70 hours, as indicated on the Itemization. This was a form complaint where Mr. Saks only need to change the names. Assuming Mr. Saks is an experienced attorney, it is unreasonable for him to bill 3.70 hours to such a task.

(2) *Motion to Dismiss:* Mr. Saks' time for opposing the Motion to Dismiss is excessive. First, he should have agreed to amend his Complaint to remove the claims which were clearly not supported by factual allegations, and that he could not even argue were appropriately included in the Complaint. 14.4 hours were devoted to the opposition to the Motion to Dismiss and oral argument. These charges are which would never be properly billed to a client because plaintiff's counsel's error in drafting the Complaint was the primary reason for the Motion to Dismiss. He should have recognized the problems, and offered to amend the Complaint to avoid 14.4 hours devoted to the opposing the Motion to Dismiss. Moreover, even when he did oppose the Motion to Dismiss, he failed to brief certain claims— clearly abandoning them as viable claims.

(3) *Settlement Conference on July 6, 2017:* Mr. Saks' charges for the Settlement Conference are also excessive. The Settlement Conference was a complete waste of time and effort given that Mr. Garcia was not present, as was required by the Court.[14] Mr. Saks misrepresented to the Court that Mr. Garcia had to work—but, as was later learned at his deposition, Mr. Garcia never had notice of the Settlement Conference so he could attend and he was not working at that time. For the Settlement Conference, Mr. Saks has billed a total of 4.2 hours, exclusive of his travel time. This time should not be allowed given that Mr. Saks failed to comply with the Court's fundamental requirement for the Settlement Conference.

(4) *Discovery Served by Plaintiff's Counsel:* Mr. Saks bills 5.6 hours for drafting discovery to the defendant. Attached as **Exhibit 9** are the discovery requests served by Mr. Saks. These are nothing but

---

[14] Defendant's Management Partner was present for the Settlement Conference as directed by the Court. However, Mr. Saks could have requested an adjournment of the Conference if he was unable to reach Mr. Garcia. He failed to do so, making everyone attend for what proved to be a wasted effort.

form discovery requests[15] which required very little editing to be used in this case, and certainly did not require 5.6 hours of drafting. It is patently unreasonable to claim that an experienced attorney would devote 5.6 hours to drafting this discovery in this case. In fact, most of the drafting, if any, was a clerical function of changing names and dates in the document.

(5) *Cross Motion for Summary Judgment:* Plaintiff's counsel filed a "cross motion" for summary judgment after the defendant moved for summary judgment. However, plaintiff's counsel, in moving for summary judgment, somehow forgot to address any of the Affirmative Defenses in the Answer to the Complaint. **Exhibit 11.** Moreover, no new authority was provided by plaintiff to support his arguments on behalf of plaintiff. Therefore, the 16 hours of time claimed by plaintiff's counsel for this effort are excessive. *See Itemization, Entries from 7 30 18 to 8 3 18.*

(6) *Joint Trial Memorandum:* According to the Itemization, Entries on 1 30 19 and 1 31 19, plaintiff's counsel is billing 3.3 hours for "Draft/Revise joint trial memo and communicate with defendant regarding the specifics of the memo" and "Draft/revise and finalize with Yaakov and defense counsel the joint trial memo." The undersigned drafted the Joint Trial Memorandum—which was apparently forgotten by plaintiff's counsel until January 25, 2019 when the undersigned faxed the draft to plaintiff's counsel. **Exhibit 5.** Because it had been substantially drafted by the undersigned when it was sent to plaintiff's counsel, very little time and effort was needed to complete the Joint Trial Memorandum, and certainly not 3.3 hours claimed.

These problems with excessive billing raise genuine concerns about the entire billing submitted by plaintiff's counsel.

Further, Mr. Saks employs generic descriptions which reveal little about what was done and how it relates to this case. "Review/analyze" is given for the "protective order" and "discovery responses." These vague descriptions tell little or nothing about what services were rendered by plaintiff's counsel.

The descriptions provided for the services rendered are sometimes even indecipherable. For example, on 6 23 16 and 6 24 16, Mr. Saks charges for research relative to the Motion to Dismiss. He

---

[15] The undersigned has another case with Mr. Saks wherein substantially the same discovery requests have been served by Mr. Saks. **Exhibit 10.**

12

does not, however, state what research was done even though he bills almost 5 hours of time for this work. This was not a novel issue of law, and a lawyer with such experience with FDCPA matters would have done the research *before* filing the Complaint.

### D. Plaintiff's Request for Attorneys Fee Must Be Reduced.

As part of the reasonableness analysis, the so-called *Johnson factors* must be considered. *Arbor Hill, supra, 522 F.3d at 190.* "After determining the amount of the presumptively reasonable fee, the court may use its discretion to increase or reduce the amount based on the particular circumstances of the case." *Pape, supra (citations omitted).*

The *Johnson factors* are: (1) the time and labor required; (2) the novelty or difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson, 488 F.2d at 717-19.*

The Johnson method relies on the district court's experience and judgment: "[T]he trial judge's expertise gained from past experience as a lawyer and his observation from the bench of lawyers at work become highly important." *Johnson, 488 F. 2d at 717.* This means that the district court employing the Johnson method would "consider factors, such as the difficulty of the case, earlier in the fee-calculation process by weighing them in setting its tentative reasonable fee, from which there would seldom be a need to depart." *Arbor Hill, 522 F.3d at 187; see, e.g., In re First Colonial Corp. of Am., 544 F.2d 1291, 1299-1300 (5th Cir. 1977) (outlining a process whereby first, the attorney seeking fees would document the hours devoted to the case; second, the district court would consider the Johnson factors and set a reasonable hourly rate; and third, the district court would explain how it balanced the Johnson factors to arrive at the reasonable hourly rate).*

In this case, the issues were not difficult or novel—but the case was exacerbated by plaintiff's counsel whose goal was to increase his claim for attorney's fees and his demands for settlement. This is born out by the fact that that Mr. Saks' results were mediocre at best. To demonstrate this, Mr. Saks claims to have devoted 10.70 hours to a discovery battle. *See Itemization, Entries from 3 8 18 to 7 17 18.* However, none of the discovery responses which were the subject of this battle were even used by plaintiff at trial. Therefore, 10.70 hours was spent with no purpose, and added nothing to the plaintiff's case.

Further, plaintiff filed a "cross motion" for summary judgment after the defendant moved for summary judgment. However, plaintiff's counsel, in moving for summary judgment, somehow forgot to address any of the Affirmative Defenses in the Answer to the Complaint. **Exhibit 11.** Therefore, the 16 hours of time claimed by plaintiff's counsel for this effort was again wasted. *See Itemization, Entries from 7 30 18 to 8 3 18.*

Moreover, Mr. Saks has failed to provide any information relative to the other factors to be considered by this Court. There was no high level of skill required for this case. There is nothing to demonstrate that Mr. Saks was required to forego other opportunities to handle this case. There were no time limitations involved. Mr. Saks has had no long-standing relationship with Mr. Garcia. However, it is clear that the results here, a $500 award to the plaintiff, does not warrant a $60,000 fee request. Another factor to consider is awards in similar cases. In *Silver v. Law Offices Howard Lee Schiff P.C., Docket No. 3:09 cv 912 (PCD) (D. Conn.; December 16, 2010) (attached)*, plaintiff's counsel was awarded $28777.50 in attorney's fees. That amount is less than 50% of the amount sought by Mr. Saks here.

Therefore, the *Johnson factors* require a downward adjustment of the fees in this case.

### E. Plaintiff's Counsel's Claim for Attorney's Fees and Costs is Barred Because He Refused to Accept Defendant's Offer of Judgment.

By date of June 14, 2017—22 days after the Complaint was filed, defendant made an Offer to Compromise under the provisions of Conn. Gen. Stat. §52-198 to the plaintiff offering to settle for the sum of $1,500.00. Docket Entry #12. Plaintiff failed to accept the Offer; **Exhibit 12.** At that point, plaintiff's counsel has spent 7 hours, according to his own Itemization—3.7 of that was allegedly drafting the complaint. Plaintiff's recovery was $500. $1000 would have easily compensated Mr. Saks

14

for the time devoted to this case at that point and the filing fee. Indeed, every offer to settle by defendant's counsel was refused.

"The purpose of Rule 68 is to encourage settlement and avoid litigation by prompting the parties to evaluate the risks and costs of litigation, and to balance them against the likelihood of success at trial." *ADVISORY COMMITTEE NOTE ON RULES OF CIVIL PROCEDURE, REPORT OF PROPOSED AMENDMENTS, 5 F.R.D. 433, 483 n. 1 (1946); Marek v. Chesny, 473 U.S. 1, 5, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985).* The Supreme Court has held that Rule 68 requires that any offer allow "judgment to be taken against the defendant for both the damages caused by the challenged conduct and the costs then accrued." *Marek, 473 U.S. at 6, 105 S.Ct. 3012.* "If a plaintiff chooses to reject a reasonable offer, then it is fair that he not be allowed to shift the cost of continuing the litigation to the defendant in the event that his gamble produces an award that is less than or equal to the amount offered." *Delta Air Lines, Inc. v. August, 450 U.S. 346, 356, 101 S.Ct. 1146, 67 L.Ed.2d 287 (1981).* Under that reasoning, a plaintiff will be required to bear its own post-offer costs and the post-offer costs of the defendant when it fails to accept a reasonable offer of judgment. *See Jolly v. Coughlin, No. 92-CV-9026(JGK), 1999 WL 20895 at \*9 (S.D.N.Y. Jan. 19, 1999).*

An offer of judgment is reasonable if it is equal to or greater than the sum of the award granted at trial and reasonable attorney's fees and costs up to the date of the offer. Defendant's June 14, 2016 offer was in the amount of $1,500, inclusive of attorney's fees. As plaintiff was awarded $500 at trial, that offer was reasonable since plaintiff's attorney's fees and costs were $1,000 or less. At that point, Mr. Saks had not even met with Mr. Garcia, and his only task had been drafting the Complaint and filing the Compliant which would not have taken him more than 2 hours. Therefore, $1,000.00 would have fairly compensated him for this time and expenditures to that point.

### F. Plaintiff's Counsel's Claims for Costs is Unreasonable and Must Be Limited.

Plaintiff's Itemization includes "Case Expenses" at the end on unnumbered page 8-9. Defendant does not quarrel with the filing fee. However, Mr. Saks includes $130 for service of process. No bill is attached to support that charge. Nonetheless, Mr. Saks never asked defendant to accept service of the Complaint. Mr. Saks had corresponded with the undersigned before filing the suit, and easily could

15

have asked that defendant accept service (as is routinely done in these cases). Therefore, since no effort was made to mitigate this expense, it should not be allowed.

As stated above, Mr. Saks then requests reimbursement of $75.00 for the filing fee for Ms. Drake's *pro hac vice* appearance. Ms. Drake's appearance was not necessary since there were already two attorneys appearing in this case. Moreover, she never filed an appearance in this case. Defendant should not be required to pay this expense.

Further, there is a request for $400.00 for "2 hotel rooms for night before the trial to be close by." Again, no documentation is provided to support this expense. Nonetheless, this is not an expense that should be passed to the defendant. Again, Mr. Saks choice that he and his associate stay at a hotel closer to the Courthouse was a personal decision made by counsel, and not a necessity. Moreover, it is again an effort to pass the cost to doing business in Connecticut by a New Jersey attorney to the defendant. This is completely unfair and unreasonable.

### III. CONCLUSION

Based upon the foregoing, the defendant respectfully requests that the Court deny plaintiff's Motion for Attorneys' Fees and Costs. 15 U.S.C. §1692k only permits the plaintiff to recover reasonable attorneys' fees and costs. Plaintiff's failure to accept the offer of judgment limits the amount of attorneys' fees and costs recoverable here. Moreover, most of the charges here are unsubstantiated and unreasonable given the nature of this case, the work involved, and the alleged experience of counsel.

Respectfully submitted,

DEFENDANT, LAW OFFICES HOWARD LEE SCHIFF P.C.,

_____
Jeanine M. Dumont   ct 05021
Law Offices Howard Lee Schiff PC
111 Founders Plaza
East Hartford, Connecticut 06108
Telephone (860) 528 9991
Fax (860) 528 7602

**CERTIFICATION OF SERVICE**

 I hereby certify that a copy of the foregoing and any attachments hereto were electronically served on SEPTEMBER 20, 2019 to the following counsel of record:

**FOR PLAINTIFF**
Yaakov Saks
Stein Saks PLLC
285 Passaic Street
Hackensack, NJ 07601
ysaks@steinsakslegal.com

**FOR PLAINTIFF**
Raphael Deutsch
Stein Saks PLLC
285 Passaic Street
Hackensack, NJ 07601
347-668-9326
rdeutsch@steinsakslegal.com

Jeanine M. Dumont

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR.**